[No. B172425. Second Dist., Div. Eight. Apr. 20, 2005.]

In re JESSE G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JESSE G., Defendant and Appellant.

726

COUNSEL

Gary Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Marc E. Turchin and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

FLIER, J.—In this case, we hold that a referee who takes on the role of both judge and advocate in a contested juvenile court proceeding, by presenting and questioning the sole witness and then adjudicating the minor's status, acts in violation of the minor's constitutional right to procedural due process.

Appellant Jesse G. appeals from an order in a juvenile proceeding adjudging him a ward of the court, removing him from the custody of his mother and ordering him suitably placed in the care, custody and control of the probation officer. We reverse.

## PROCEDURAL HISTORY

The chief probation officer of Los Angeles County filed a petition alleging appellant was a minor who came within the provisions of Welfare and Institutions Code section 601.[1] The petition alleged appellant left home without permission on two occasions. Appellant denied the allegation.

The juvenile court sustained the petition, declared appellant a ward of the court and ordered appellant to be suitably placed. Appellant timely appealed from the findings and order.

## FACTS

The petition alleged that appellant left home for three days without permission on two occasions: August 2 through 5, 2003, and September 13 through 16, 2003.

At the adjudication hearing, appellant appeared at the hearing with a deputy public defender. A deputy district attorney was present in the hearing room but told the referee that "if this is a [section] 601, it's not the People's case. The court makes the inquiry." The referee expressed surprise noting it was "done differently" in other courts. She stated, "The court has it for adjudication, so the court is placed in a position as being the prosecutor." Appellant's counsel did not object at this point but appeared to agree with the deputy district attorney, saying, "Unless I'm told, the court may inquire of the mother what steps she's done to remove the incorrigibility."

The referee accordingly proceeded to question the single witness, appellant's mother, through an interpreter: "Speaking to the mother, the last time we were in court we were informed regarding your son's behavior at home.

---

[1] Welfare and Institutions Code section 601, subdivision (a) provides: "Any person under the age of 18 years who persistently or habitually refuses to obey the reasonable and proper orders or directions of his or her parents, guardian, or custodian, or who is beyond the control of that person, or who is under the age of 18 years when he or she violated any ordinance of any city or county of this state establishing a curfew based solely on age is within the jurisdiction of the juvenile court which may adjudge the minor to be a ward of the court."

All further section references are to the Welfare and Institutions Code.

And how have things been since the last court date?" Appellant's mother replied, "The same." The referee then asked the mother if appellant left home without permission on August 2, 2003. She responded, "He continues to go out at night despite of the fact that I say no. I called the police but they don't always do the reports, but I have a new one." The referee further asked if appellant left home without permission on September 13, 2003, and remained away with his whereabouts unknown until September 16, 2003. She answered, "Yes."

The referee then indicated her tentative ruling was to sustain the petition. Appellant's counsel objected that there was insufficient evidence for making appellant a ward of the court.

Appellant's mother was sworn as a witness, and the referee questioned her further: "[I]s everything you've told the court today the truth?" Appellant's mother responded: "Yes. There is [*sic*] many other things. More than anything else, the way I deem him incorrigible is the fact that I cannot even talk to him. When I talk to him and I tell him not to use profanity, he slams doors. He doesn't care. He breaks things. If he wants something, for instance, from a kid, he takes it away from him even if the kid doesn't want to give it to him. [¶] He doesn't want to listen to me at all. He gets into the computer. He gets on the internet. He started the internet; I didn't. And he looks at adult stuff. I tried to take him off, and he gets out of control. At night he's doing that, and he sleeps during the day. [¶] And then at night he gets up to the street. I don't want him to get involved with gangs and that kind of thing because I don't know what happens when he leaves." The referee attempted to obtain additional evidence from the mother, saying: "You had also indicated previously that Jesse had been aggressive with other members of the household on occasion." Appellant's mother replied, "More than anything, with my son."

After this exchange, the referee stated she had heard sufficient information. She inquired whether appellant's counsel had any questions for the mother. At that point, appellant's counsel voiced an objection to the court "taking the role of being prosecutor in this case while presiding as a judicial officer."[2]

The referee did not rule on the objection but sustained the petition.

---

[2] *Appellant's counsel objected that, if anyone were to prosecute the matter, it should be the probation officer. It does not appear from the record that the probation officer was present at this hearing.*

## DISCUSSION

Appellant contends the juvenile court's order should be reversed because the referee improperly assumed the functions of an advocate in violation of appellant's federal constitutional due process right to a fair hearing. We agree.

In contested juvenile court proceedings, the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution require that "not only must there be actual fairness in the hearing but there must be the appearance of justice." (*Gloria M. v. Superior Court* (1971) 21 Cal.App.3d 525, 527 [98 Cal.Rptr. 604] (*Gloria M.*); see also *In re Ruth H.* (1972) 26 Cal.App.3d 77, 86 [102 Cal.Rptr. 534] (*Ruth H.*); *Lois R. v. Superior Court* (1971) 19 Cal.App.3d 895, 902–903 [97 Cal.Rptr. 158] (*Lois R.*).)

In *Lois R.*, the referee in a contested dependency petition in juvenile court questioned the witnesses, cross-examined witnesses, made objections to questions asked and ruled on objections and motions throughout the hearing. (*Lois R., supra*, 19 Cal.App.3d at pp. 897–898.) Our colleagues in Division Five issued a writ restraining the juvenile court from taking further proceedings, holding that "[w]here the petition is contested, the parents are entitled to a fair hearing with an impartial arbiter, both in fact and in reality, and that means the provision of a referee who does not assume the functions of advocate." (*Id.* at p. 903.)

In *Gloria M.*, another case decided by Division Five, the panel reversed an order finding minors to be dependent children of the juvenile court. (*Gloria M., supra*, 21 Cal.App.3d 525.) As in *Lois R., supra*, 19 Cal.App.3d 895, the referee conducted the questioning of the social services department's witness, cross-examined the parents' witnesses, ruled on objections and motions made by counsel for the parents, and made and then ruled upon objections to questions asked by counsel. (*Gloria M., supra*, at p. 527.) The referee at the outset had forthrightly announced he was being called to act in a dual role and apparently attempted to balance these roles by allowing the social service department's witness to testify in narrative form. (*Id.* at p. 528.) The court observed that even if the referee had commenced the hearing with the appearance of impartiality, "as the hearing progressed he did not maintain it." (*Ibid.*) In a footnote, the court cited numerous instances where the referee

stepped out of his judicial role and assumed that of an advocate. (*Id.* at p. 528, fn. 4.) Reversing the order, the court stated, "we do not feel that reviewing courts should or need to be put to the task of making evaluations between . . . 'attempts to conduct [hearings] in a fair manner.' " (*Id.* at pp. 528–529.)

As in *Gloria M.*, the referee in this case at first expressed reluctance to assume the role of an advocate when the deputy district attorney informed her it was the existing practice for the court to make the inquiry. The referee observed, "The court has it for adjudication, so the court is placed in a position as being the prosecutor." All the same, the referee proceeded to question appellant's mother. She allowed the witness to testify in narrative form as in *Gloria M.*, but unlike that case so far as the record reflects she appeared to maintain an impartial demeanor throughout the proceeding. Since appellant's counsel did not cross-examine the witness or call any witnesses, there was no occasion for the referee to object to questions, cross-examine witnesses or rule on evidentiary matters. However, after the referee concluded questioning the sole witness, she was called upon to rule on appellant's objection to the manner of proceeding and to adjudicate the petition. This placed her in the dual role of judge and advocate.

A comparable situation occurred in *Ruth H.*, where the referee both called and questioned witnesses and ruled on the outcome of the hearing. As in the case at bar, the referee displayed no partiality during the proceedings, and there was no evidence of unfairness or injustice. (*Ruth H.*, *supra*, 26 Cal.App.3d at p. 84.) Nonetheless, Division Four of this court reversed the juvenile court's order adjudging the minor a ward of the court, noting it was "not necessarily in agreement with our sister division" but felt "obligated to avoid conflict with another division of this district." (*Id.* at pp. 85–86.)

We, as a reviewing court, similarly will not scrutinize the record to evaluate whether the referee acted in a fair manner. The dual obligations placed on the referee here violated appellant's constitutional right to procedural due process. (*Ruth H.*, *supra*, 26 Cal.App.3d at p. 84; *Gloria M.*, *supra*, 21 Cal.App.3d at pp. 529–530; *Lois R.*, *supra*, 19 Cal.App.3d at pp. 902–903.) " '[T]he very nature of the unfairness complained of is such that it may not be visible on the face of the record, no matter how conscientiously the record is scrutinized by the appellate court.' " (*Lois R.*, at p. 902; see *In re Gault* (1967) 387 U.S. 1, 30 [18 L.Ed.2d 527, 87 S.Ct. 1428] [" 'the hearing must measure up to the essentials of due process and fair

treatment' "].) Justice is better served by requiring counsel or a trained representative to appear on the petitioner's behalf. (*Gloria M., supra*, at pp. 529–530; *Lois R., supra*, at p. 903; see *Ruth H., supra*, at p. 86.)

■ Respondent argues that the district attorney has no independent right to appear at a dispositional hearing in delinquency cases. However, the parties in section 601 proceedings are the minor and the probation officer. (*People v. Superior Court (Tony S.)* (1975) 44 Cal.App.3d 904, 908 [119 Cal.Rptr. 125].) The probation officer must determine upon investigation whether the minor's best interest would be served if he is declared a ward of the court and must furnish such assistance and information as the court may require in the disposition of the case. (*In re Steven C.* (1970) 9 Cal.App.3d 255, 265 [88 Cal.Rptr. 97].) "[I]f required by the court the probation officer must serve as the person who elicits all relevant information so as to insure an intelligent disposition in the child's best objective interest." (*Ibid.*) Under section 681, subdivision (b), where the minor is represented by counsel, "the prosecuting attorney may, with the consent or at the request of the juvenile court judge, or at the request of the probation officer with the consent of the juvenile court judge, appear and participate in the hearing to assist in the ascertaining and presenting of the evidence." (§ 681, subd. (b); see 10 Witkin, Summary of Cal. Law (9th ed. 1989) Parent and Child, § 551, p. 622.)

■ "[I]f the petition is contested, the case against the minor should be presented by the probation officer or some other qualified representative of the county. If the judge or referee takes over the hearing, conducting the examination of witnesses, making objections to questions of counsel for the minor or parent, and ruling on objections and motions, he improperly assumes the functions of an advocate. The proceeding is therefore a denial of due process, . . . and an adjudication in such a hearing is reversible error per se." (10 Witkin, Summary of Cal. Law, *supra*, § 554, pp. 625–626.) The referee here was placed in the position of prosecutor since no probation officer was present and the deputy district attorney, though present, stated her office had no file on the matter. Although appellant's counsel initially did not object and indeed seemed to concur in the referee's questioning of the mother, he timely objected to the procedure before the referee's ruling, stating "it would be the probation officer that is required . . . to do this." At that point, the referee should have continued the proceedings and required the probation officer to attend the hearing to prosecute the petition or allowed the district attorney to participate to assist in the ascertaining and presenting of the evidence.

## DISPOSITION

The order is reversed and remanded to the juvenile court for such further proceedings as the chief probation officer may determine to pursue.

Cooper, P. J., and Boland, J., concurred.